1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  CHARLES GABRIS and MARLENE        No.  2:14-cv-01759-JAM-KJN
    GABRIS,
12
              Plaintiffs,
13                                    **ORDER GRANTING DEFENDANTS'**
         v.                           **MOTION TO DISMISS**
14
    AURORA LOAN SERVICES LLC;
15  AURORA BANK, FSB; CITIBANK,
    N.A., as Trustee in Trust for
16  the Benefit of the Holders of
    Structured Asset Securities
17  Corporation, Mortgage Pass-
    Through Certificates, Series
18  2004-23XS; CAL-WESTERN
    RECONVEYANCE CORP.; MORTGAGE
19  ELECTRONIC REGISTRATION
    SYSTEMS, INC., and DOES 1
20  through 50, inclusive,

21              Defendants.

22

23      Defendants Aurora Loan Services LLC ("Aurora Services");

24  Aurora Bank, FSB; Citibank, N.A. ("Citibank"); Cal Western

25  Reconveyance Corporation; and Mortgage Electronic Registration

26  Systems, Inc. ("MERS") (collectively "Defendants") move to

27  dismiss (Doc. #4) all seven causes of action in Plaintiffs

28  Charles and Marlene Gabris' (collectively "Plaintiffs") Complaint

                              1

1   (Doc. #1-1, Exh. 1).[1]  The action arises out of a dispute over

2   the foreclosure and sale of a property previously belonging to

3   Plaintiffs and the loan modification negotiations preceding that

4   sale.

5

6           I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

7           In September 2004, Plaintiffs obtained a loan in the amount

8   of $226,000 ("the Loan").  Request for Judicial Notice, Exh. 1.

9   The Loan was secured by a deed of trust recorded against property

10  located at 11529 Mother Lode Circle, Rancho Cordova, California

11  95670 ("the Property").  The deed of trust indicates the Lender

12  was Vitek Real Estate Industries Group, Inc. d/b/a Vitek Mortgage

13  Group ("Vitek"), the Trustee was Chicago Title Company (CTC) and

14  MERS was the beneficiary as well as the nominee for the lender

15  and its successors and assigns.

16          Plaintiffs allege that in December 2009 they applied to

17  Aurora Services for a Home Affordable Modification Program

18  ("HAMP") loan modification through the Neighborhood Assistance

19  Corporation of America ("NACA").  Comp. ¶ 19.  Plaintiffs allege

20  they sent in all required financial documentation, and Aurora

21  Services acknowledged receipt of those documents and requested

22  additional documents.  By April 2010, Plaintiffs were

23  approximately two months behind in their loan payments.

24          In May 2010, Plaintiffs enlisted an individual named Lou

25  Dedier to negotiate with Aurora Services on their behalf.  Comp

26

27  [1] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled
28  for September 17, 2014.

                                    2

1    ¶ 23.   Shortly thereafter, Aurora Services acknowledged receipt

2    of another package of financial documents regarding a HAMP

3    modification request, but again requested more information,

4    providing Plaintiffs thirty days to provide the aforementioned

5    information.   However, Plaintiffs received a letter five days

6    later informing them their modification request was denied for

7    failing to provide the documents requested.

8        Plaintiffs allege in June 2010 Aurora Services verbally

9    agreed to extend Plaintiffs a trial payment plan thereby reducing

10   their monthly payments from $1130 to $912.   Comp. ¶ 24.   While

11   making these modified trial payments, Plaintiffs allege they

12   continued to seek a permanent loan modification, but the attempts

13   were repeatedly denied based on Aurora Services' false

14   representations that Plaintiffs failed to provide necessary

15   documents.   Comp. ¶ 25.   Plaintiffs allege they always provided

16   Aurora Services the documents requested.

17       In October 2010, Aurora Services increased the monthly

18   payment from $1130 to $1715.43, which was indicated on the

19   monthly statements sent to Plaintiffs.   Comp. ¶ 27.   However,

20   Plaintiffs continued to make the lower payments under the belief

21   they were still performing under the trial payment plan.   When

22   they attempted a "normal unmodified payment" of $1130 in June

23   2011, the payment was returned to them.   Comp. ¶ 32.   Plaintiffs

24   allege the loan was referred to foreclosure at this time.

25       In February 2011 and again in March 2011, Aurora Services

26   denied Plaintiffs a HAMP modification on the grounds that a

27   modification was not justified given the net present value

28   ("NPV") calculations.   Comp. ¶ 29.

1    After additional failed attempts to secure a loan
2  modification, Aurora Services recorded a notice of default in
3  June 2011 and notified Plaintiffs of a trustee's sale in July
4  2011.  Comp. ¶¶ 35-36.  After a failed short sale attempt and
5  another failed application for a loan modification, the property
6  was sold at a foreclosure sale in December 2011.  Comp. ¶¶ 37-38,
7  40-42.

8    Plaintiffs plead seven causes of action in their Complaint:
9  (1) Intentional Misrepresentation; (2) Negligent
10 Misrepresentation; (3) Wrongful Foreclosure; (4) Conversion;
11 (5) Violation of California Business and Professions Code § 17200
12 ("§17200"); (6) Equitable Accounting; and (7) Unjust Enrichment.
13 Defendants removed the matter to this Court and filed the present
14 motion.

15
16                    II.   OPINION
17    A.   Request for Judicial Notice
18    Defendants request the Court take judicial notice (Doc. #5)
19 of nine exhibits in support of their motion to dismiss.
20    Generally, the Court may not consider material beyond the
21 pleadings in ruling on a motion to dismiss for failure to state a
22 claim.  The exceptions are material attached to, or relied on by,
23 the complaint so long as authenticity is not disputed, or matters
24 of public record, provided that they are not subject to
25 reasonable dispute.  E.g., Sherman v. Stryker Corp., 2009 WL
26 2241664, at *2 (C.D. Cal. 2009) (citing Lee v. City of Los
27 Angeles, 250 F.3d 668, 688 (9th Cir. 2001) and Fed. R. Evid.
28 201).

4

1    The Court takes judicial notice of all nine exhibits as each

2    is a public record not subject to reasonable dispute and is

3    relied on by the Complaint. Each document is also relevant to

4    either the ownership of the property or the status of the Loan

5    underlying Plaintiffs' claims.  Therefore, Defendants' request

6    for judicial notice is GRANTED in its entirety.

7         B.   Discussion

8              1.   Initial Arguments

9    Defendants initially contend Plaintiffs cannot seek return

10   of the property for failure to tender and based on the doctrine

11   of laches.  MTD at pp. 6-7.  In their response, Plaintiffs have

12   clarified the Complaint does not seek a return of the property,

13   and so, the Court disregards these arguments.

14              2.   Negligent and Intentional Misrepresentations

15   Defendants contend Plaintiffs' claims for negligent and

16   intentional misrepresentation fail on the merits.  MTD at pp. 9-

17   10.

18   The essential elements of a claim for intentional

19   misrepresentation are (1) a misrepresentation; (2) knowledge of

20   falsity; (3) intent to induce reliance; (4) actual and

21   justifiable reliance; and (5) resulting damage.  Lazar v.

22   Superior Court, 12 Cal. 4th 631, 638 (1996).  "The essential

23   elements of a count for negligent misrepresentation are the same

24   except that it does not require knowledge of falsity, but instead

25   requires a misrepresentation of fact by a person who has no

26   reasonable grounds for believing it to be true."  Chapman v.

27   Skype Inc., 220 Cal.App.4th 217, 230-31 (2013).  A plaintiff's

28   claim for fraud must also satisfy the heightened requirements of

1   Federal Rule of Civil Procedure 9(b):

2        Rule 9(b) demands that, when averments of fraud are
3        made, the circumstances constituting the alleged fraud
         "be 'specific enough to give defendants notice of the
4        particular misconduct . . . so that they can defend
         against the charge and not just deny that they have
5        done anything wrong.'" <u>Bly-Magee [v. California]</u>, 236
         F.3d [1014,] 1019 [(9th Cir. 2001)] (quoting <u>Neubronner</u>
6        <u>v. Milken</u>, 6 F.3d 666, 672 (9th Cir. 1993)).  Averments
         of fraud must be accompanied by "the who, what, when,
7        where, and how" of the misconduct charged.  <u>Cooper v.</u>
         <u>Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997).  "[A]
8        plaintiff must set forth more than the neutral facts
         necessary to identify the transaction. The plaintiff
9        must set forth what is false or misleading about a
         statement, and why it is false." <u>Decker v. GlenFed,</u>
10       <u>Inc. (In re GlenFed, Inc. Sec. Litig.)</u>, 42 F.3d 1541,
         1548 (9th Cir. 1994).
11
12   <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir.

13   2003).

14        Plaintiffs base these two claims on allegations that Aurora

15   Services continually denied them a loan modification on false

16   grounds, had no intention of ever granting a loan modification,

17   and were involved in a "conspiracy to deceive and victimize

18   Plaintiffs" with the other Defendants.  Comp. ¶¶ 63-66, 70-75.

19   Plaintiffs allege they would have cured their default with the

20   help of a friend if they knew they were not going to get a loan

21   modification.

22        First, Plaintiffs' allegations regarding the involvement of

23   all Defendants other than Aurora Services fail to meet the

24   heightened pleading standard for fraud.  The only allegations

25   regarding the other Defendants is that they conspired with Aurora

26   Services in a scheme to defraud Plaintiffs.  These conclusory

27   allegations are insufficient.  As for the negligent

28

                                    6

1   misrepresentation claim, Plaintiffs have failed to properly plead

2   facts which demonstrate how exactly the other Defendants are to

3   be held responsible for the negligent representations allegedly

4   made by Aurora Services.  The Court grants the motion to dismiss

5   the claims for intentional and negligent misrepresentations as to

6   all Defendants other than Aurora Services on this ground.

7        As for Aurora Services, notwithstanding other possible

8   defects in these claims, the Court finds Plaintiffs have failed

9   to adequately allege justifiable reliance or damages as a result

10  against this Defendant.  There are no allegations that any

11  Defendant ever promised Plaintiffs that they would receive a loan

12  modification.  Plaintiffs' Complaint makes clear that they had

13  the ability to cure their arrearage but decided to continue to

14  apply for loan modifications despite being repeatedly rejected by

15  Aurora Services.

16       Plaintiffs were already contractually obligated to make loan

17  payments and were aware of the consequences of failing to do so,

18  default and foreclosure.  Other courts facing similar claims have

19  granted motions to dismiss on these grounds.  See Newgent v.

20  Wells Fargo Bank, N.A., 09CV1525 WQH, 2010 WL 761236, at *6-7

21  (S.D. Cal. 2010) (finding that because the "Plaintiff was already

22  legally obligated to make payments on her mortgage . . . the

23  payment in reliance on the promise that Wells Fargo would delay

24  the trustee's sale was not detrimental).

25       In Morgan v. Aurora Loan Servs., LLC, CV 12-4350-CAS MRWX,

26  2013 WL 3448552, at *5-6 (C.D. Cal. 2013), the plaintiff brought

27  a claim for intentional misrepresentation on the basis that the

28  defendants represented to her that she would be reviewed for a

1  loan modification but never intended to do so.  The plaintiff

2  alleged the defendants' true intention was to take more of her

3  money before foreclosing on her property.  Id.  The plaintiff

4  alleged that she relied on those statements by continuing to make

5  payments under a payment plan agreement while seeking a

6  modification.  Id.  The court found that, in addition to other

7  deficiencies, the plaintiff was "unable to allege that she

8  justifiably relied on defendants['] statements to her detriment,

9  as she was already contractually obligated to make loan

10  payments."  Id.  The court reasoned that "[e]ven if defendants

11  somehow fraudulently induced plaintiff to make additional

12  payments with the promise of a potential permanent loan

13  modification, these payments were made pursuant to preexisting

14  contractual duties."  Id.

15      Similarly, in Zierolf v. Wachovia Mortgage, C-12-3461 EMC,

16  2012 WL 6161352, at *5-7 (N.D. Cal. 2012), appeal dismissed (July

17  31, 2013), the court found that the plaintiff did not demonstrate

18  that "any damages resulted from his apparent reliance on Wells

19  Fargo's alleged promises to process his loan modification"

20  because he "had an existing obligation to make his mortgage

21  payments or risk default and foreclosure."  The court reasoned

22  that "[t]he risk that one's home loan could go into default and

23  one's home be sold at a foreclosure auction for nonpayment is a

24  remedy provided in the loan agreement itself, not a consequence

25  of allegedly relying on promises to process a loan modification."

26  Id.

27      The Court notes that Plaintiffs do allege that there was

28  some "verbal agreement" to enter into a trial payment plan.

Comp. ¶ 24.  However, the claims brought in the Complaint sound in tort, and Plaintiffs have not alleged that Defendants were contractually obligated to provide a loan modification as a result of a verbal agreement.  <u>See</u> <u>generally</u>, <u>Sholiay v. Fed. Nat. Mortgage Ass'n</u>, CIV 2:13-00958, 2013 WL 5569988, at *3-6 (E.D. Cal. 2013); <u>Corvello v. Wells Fargo Bank, NA</u>, 728 F.3d 878, 884 (9th Cir. 2013), as amended on reh'g in part (Sept. 23, 2013); <u>see</u> <u>also</u> <u>Hoffman v. Bank of Am., N.A.</u>, C 10-2171 SI, 2010 WL 2635773, at *5 (N.D. Cal. 2010) (concluding that "lenders are not required to make loan modifications for borrowers that qualify under HAMP nor does the servicer's agreement confer an enforceable right on the borrower").

     For all the reasons discussed above, the Court grants Defendants' motion to dismiss Plaintiffs' first and second causes of action for intentional and negligent misrepresentations. While leave to amend must be freely given, the Court is not required to allow futile amendments. <u>See</u> <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992); <u>Dick v. Am. Home Mortgage Servicing, Inc.</u>, CIV. 2:13-00201 WBS, 2013 WL 5299180, at *6 (E.D. Cal. 2013).  Because it is not clear to the Court that amendment of these claims would be futile, leave to amend is granted, but "plaintiffs are admonished that failure to cure the defects identified in this Order will be grounds for dismissal without further leave to amend." <u>Dick</u>, at *6.

     Having granted the motion on these grounds, the Court need not, and does not, address the statute of limitations arguments proffered by Defendants.

1              3.   Wrongful Foreclosure

2        Defendants contend Plaintiffs have failed to plead a valid

3   cause of action for wrongful foreclosure in the third cause of

4   action.  MTD at pp. 11-13.  The Complaint sets forth in detail

5   the defects that Plaintiffs allege were involved in the

6   securitization of the Loan and which serve as the basis for this

7   claim.  Comp. ¶¶ 43-49, 79-86.  Defendants argue Plaintiffs have

8   no standing to challenge the securitization or assignment of the

9   Loan, and even if standing were established, Plaintiffs cannot

10  prove any prejudice occurred as a result.

11       "Many courts have aborted homeowners' lawsuits following

12  foreclosure, holding that the homeowners did not have standing to

13  challenge a vast array of irregularities in the transfer of

14  rights and obligations under assignments and substitutions."

15  Mendoza v. JPMorgan Chase Bank, N.A., 228 Cal.App.4th 1020, 1030-

16  31 (2014), review filed (Sept. 23, 2014); see also Jenkins v. JP

17  Morgan Chase Bank, N.A., 216 Cal.App.4th 497, 513 (2013).

18  Similarly, the position taken by many District Courts in the

19  Ninth Circuit is that a homeowner plaintiff lacks standing to

20  challenge the securitization of his or her loan.  Mendoza, at

21  1031; Aniel v. GMAC Mortgage, LLC, C 12-04201 SBA, 2012 WL

22  5389706, at *4 (N.D. Cal. 2012).

23       The Court finds that Plaintiffs have not properly alleged a

24  basis for standing to challenge the securitization of the Loan in

25  their wrongful foreclosure claim.  However, even if standing were

26  found, Plaintiffs fail to properly allege prejudice as a result.

27       "[A] plaintiff in a suit for wrongful foreclosure has

28  generally been required to demonstrate the alleged imperfection

                              10

1   in the foreclosure process was prejudicial to the plaintiff's

2   interests." _Fontenot v. Wells Fargo Bank, N.A._, 198 Cal.App.4th

3   256, 272 (2011). "California courts find a lack of prejudice

4   when a borrower is in default and cannot show that the allegedly

5   improper assignment interfered with the borrower's ability to pay

6   or that the original lender would not have foreclosed under the

7   circumstances." _Dick_, 2013 WL 5299180, at *2-3.

8       The issues here are analogous to those in _Siliga v. Mortgage_

9   _Elec. Registration Sys., Inc._, 219 Cal.App.4th 75, 85 (2013).

10  The _Siliga_ court found that despite the issue regarding standing,

11  the plaintiffs failed "to allege any facts showing that they

12  suffered prejudice as a result of any lack of authority of the

13  parties participating in the foreclosure process." _Id._   The

14  court reasoned:

15      The [plaintiffs] do not dispute that they are in
        default under the note.  The assignment of the deed of
16      trust and the note did not change the plaintiffs'
        obligations under the note, and there is no reason to
17      believe that . . . the original lender would have
        refrained from foreclosure in these circumstances.
18      Absent any prejudice, the [plaintiffs] have no standing
        to complain about any alleged lack of authority or
19      defective assignment.

20  _Id._

21      The Court finds Plaintiffs have failed to properly allege

22  any prejudice as a result of the securitization or foreclosure

23  process, and so, the Court GRANTS Defendants' motion to dismiss

24  the third cause of action for wrongful foreclosure.  The motion

25  is granted without leave to amend, as Plaintiffs cannot properly

26  make out a wrongful foreclosure claim based on an improper

27  securitization under the circumstances alleged.

28

1              4.    Conversion and Unjust Enrichment

2          The fourth and seventh causes of action for conversion and

3     unjust enrichment rely on allegations of a faulty securitization

4     and misrepresentations regarding modification of the Loan that

5     have been discussed and rejected above.

6          The alleged securitization deficiencies cannot serve as the

7     basis for the conversion or unjust enrichment claims because

8     Plaintiffs were under an obligation to make the payments

9     underlying the claims as already discussed.  Similarly, the

10    alleged misrepresentations did not result in an unjust enrichment

11    of Defendants.  Again, Plaintiffs were under an obligation to

12    make payments on the Loan provided and serviced by Defendants.

13    The Court finds these claims are not viable, and so GRANTS

14    Defendants' motion to dismiss the fourth and seventh causes of

15    action. The dismissal of these claims is with leave to amend

16    since it is not clear that further amendment would be futile.

17    See generally, Reade v. CitiMortgage, Inc., 13CV404 L WVG, 2013

18    WL 5964611, at *4 (S.D. Cal. 2013) (finding a borrower's

19    obligations are not excused because of an improper

20    securitization); see also Marty v. Wells Fargo Bank, CIV S-10-

21    0555 GEB, 2011 WL 1103405, at *7 (E.D. Cal. 2011).

22             5.    Unfair Competition

23         Plaintiffs' fifth cause of action alleges a violation of

24    §17200.  Because the Court has found Plaintiffs have not

25    adequately alleged damages or injury as a result of Defendants'

26    conduct, the claim must fail.  Cal. Bus. & Prof. Code § 17204;

27    Kwikset Corporation v. Superior Court of Orange County, 51

28    Cal.4th 310, 320-21 (2011) (finding that private standing is

1   limited to any person who has suffered injury in fact and has

2   lost money or property as a result of alleged unfair or unlawful

3   conduct).  Defendants' motion to dismiss the fifth cause of

4   action is GRANTED with leave to amend.

5               6.   Equitable Accounting

6       Defendants contend Plaintiffs have failed to state a valid

7   claim for equitable accounting.  MTD at p. 15-16.  Plaintiffs

8   argue that because Defendants unjustly enriched themselves

9   through a modification process tainted with fraud it is owed an

10  accounting.  Opp. at p. 19.

11      "An accounting cause of action is equitable and may be

12  sought where the accounts are so complicated that an ordinary

13  legal action demanding a fixed sum is impracticable."  Herrejon

14  v. Ocwen Loan Servicing, LLC, 980 F. Supp. 2d 1186, 1207 (E.D.

15  Cal. 2013).  "A right to an accounting is derivative; it must be

16  based on other claims."  Janis v. California State Lottery Com.,

17  68 Cal.App.4th 824, 833 (1998).

18      Plaintiffs base their cause of action for an equitable

19  accounting on Defendants' "indebtedness" arising from the

20  payments made by Plaintiffs during the loan modification process.

21  The court in Herrejon dismissed a similar claim finding:

22          The complaint lacks facts to support an accounting,
            especially given the dismissal of the complaint's other
23          claims from which to derive an accounting.  There are
            no facts to support complicated accounts, and
24          presumably plaintiffs have the ability to ascertain
            what they allegedly paid to defendants.  The complaint
25          fails to invoke equity for an accounting, and the
            accounting claim is subject to dismissal.
26

27  Herrejon, 980 F. Supp. 2d at 1208; see also Janis, 68 Cal.App.4th

28  at 833.

1      Applying Herrejon to the instant case, the Court GRANTS

2  Defendants' motion to dismiss the sixth cause of action for an

3  equitable accounting.  As the Court is not convinced that

4  amendment would be futile given that leave to amend other claims

5  has been granted, the Court grants leave to amend this cause of

6  action as well.

7         7.   Defendants Aurora Bank FSB and Citibank

8      Defendants contend the complaint should be dismissed against

9  Defendants Aurora Commercial Corp. (alleged to be the successor

10  entity of Defendant Aurora Bank FSB) and Citibank as there are no

11  direct allegations of their involvement in the conduct underlying

12  Plaintiffs' claims.  MTD at pp. 5-6.  As the Court has already

13  dismissed each of the causes of action in the Complaint as

14  against all Defendants, the Court need not address these

15  arguments specifically.

16

17               III.   ORDER

18      For the reasons set forth above, the Court GRANTS

19  Defendants' motion to dismiss the third cause of action for

20  wrongful foreclosure WITHOUT LEAVE TO AMEND, and GRANTS the

21  motion as to the other six counts WITH LEAVE TO AMEND.  If

22  Plaintiffs wish to submit an amended complaint, it must be filed

23  within twenty (20) days from the date of this Order.  Defendants'

24  responsive pleading is due within twenty (20) days thereafter.

25      IT IS SO ORDERED.

26  Dated: October 29, 2014

27

28

                                    JOHN A. MENDEZ,
                                    UNITED STATES DISTRICT JUDGE