UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES GABRIS and MARLENE GABRIS,<br><br>          Plaintiffs,<br><br>    v.<br><br>AURORA LOAN SERVICES LLC; AURORA BANK, FSB; CITIBANK, N.A., as Trustee in Trust for the Benefit of the Holders of Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2004-23XS; CAL-WESTERN RECONVEYANCE CORP.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and DOES 1 through 50, inclusive,<br><br>          Defendants. | No.  2:14-cv-01759-JAM-KJN<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

Plaintiffs Charles and Marlene Gabris ("Plaintiffs") bring claims against Defendants Aurora Loan Services LLC ("Aurora Services"); Aurora Bank, FSB; Citibank, N.A. ("Citibank"); Cal Western Reconveyance Corporation; and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively "Defendants") arising from the residential mortgage loan modification

1

transactions between the parties.  Plaintiffs' original complaint (Doc. #1-1, Exh. 1) was dismissed in its entirety by this Court (Doc. #10) on Defendants' previous motion to dismiss (Doc. #4), with leave to amend granted on some claims.  Plaintiffs then filed the first amended complaint ("FAC") (Doc. #11), and Defendants have again moved to dismiss (Doc. #14) Plaintiffs' claims.  A hearing was held in which both parties expanded upon the arguments in their briefs; thereafter, the motion was submitted.  After considering the written and oral arguments of both parties, the Court hereby GRANTS the motion to dismiss in its entirety for the reasons that follow.

I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The FAC states six causes of action against Defendants: (1) Intentional Misrepresentation; (2) Negligent Misrepresentation; (3) Conversion; (4) Violation of California Business and Professions Code § 17200 ("UCL"); (5) Equitable Accounting; and (6) Unjust Enrichment.

Plaintiffs entered into a loan with Aurora Services in 2004. In 2009, Plaintiffs applied for a loan modification.  Over the following years, Plaintiffs continued to go back and forth with Aurora Services regarding the modification.  Plaintiffs allege that Aurora Services never intended to modify their loan during this period, but rather was "inducing" them into an "incurable default."

Meanwhile, in 2010, Aurora Services agreed to enter into a trial payment plan ("TPP") with Plaintiffs, reducing their monthly payment.  Plaintiffs paid regularly on the TPP initially.

1   However, Aurora Services eventually had to raise the monthly
2   payment amount in order to cover escrow costs.  Although Aurora
3   Services sent monthly statements indicating the new payment
4   amount, Plaintiffs continued to pay the older, lower amount.
5   Eventually, Aurora Services referred the loan for foreclosure.
6        Plaintiffs were continually denied a loan modification over
7   this period for what they allege were false grounds.  They allege
8   that had "Aurora [Services] told Plaintiffs that they would never
9   qualify for a loan modification, Plaintiffs had alternative means
10  to pay back their arrears and keep the loan current, including
11  borrowing money from a family friend."  Plaintiffs do not allege
12  they attempted to cure the arrearages at any point.  After
13  receiving the notice of default, they unsuccessfully attempted a
14  short sale of the property securing the loan.  Defendants then
15  sold the property at a foreclosure sale to Aurora Services and
16  eventually Aurora Services sold it to another party.

18                        II.   OPINION
19       A.   Request for Judicial Notice
20            Defendants request the Court take judicial notice (Doc. #15)
21  of nine exhibits in support of their motion to dismiss.
22            Generally, the Court may not consider material beyond the
23  pleadings in ruling on a motion to dismiss for failure to state a
24  claim.  The exceptions are material attached to, or relied on by,
25  the complaint so long as authenticity is not disputed, or matters
26  of public record, provided that they are not subject to
27  reasonable dispute.  E.g., Sherman v. Stryker Corp., 2009 WL
28  2241664, at *2 (C.D. Cal. 2009) (citing Lee v. City of Los

3

Angeles, 250 F.3d 668, 688 (9th Cir. 2001) and Fed. R. Evid. 201).

The Court takes judicial notice of all nine exhibits as each is a public record not subject to reasonable dispute and is relied on by the FAC.  Each document is also relevant to either the ownership of the property or the status of the loan underlying Plaintiffs' claims.  Therefore, Defendants' request for judicial notice is GRANTED.

    B.   Intentional & Negligent Misrepresentation Claims

Defendants contend Plaintiffs' claims for intentional and negligent misrepresentation should be dismissed for failure to state a claim.

The essential elements of a claim for intentional misrepresentation are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage. Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996).  "The essential elements of a count for negligent misrepresentation are the same except that it does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." Chapman v. Skype Inc., 220 Cal.App.4th 217, 230-31 (2013).  A plaintiff's claim for fraud must also satisfy the heightened requirements of Federal Rule of Civil Procedure 9(b):

> Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Bly-Magee [v. California], 236 F.3d [1014,] 1019 [(9th Cir.2001)] (quoting Neubronner

v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)). Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir.1994).

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiffs claim they have sufficiently pleaded intentional and negligent misrepresentation in the FAC. They point to the misrepresentations listed in the FAC that Aurora Services allegedly made to them. They argue Defendants attempted to keep them in a "perpetual modification review." They assert that had they known Defendants really had no intention to grant a loan modification they would have cured any arrearages by borrowing from a friend. Plaintiffs argue that although Defendants never promised a loan modification or absolved them of their obligations under the loan itself, Defendants' misrepresentations during the modification negotiations "induc[ed] Plaintiffs into a practically incurable default."

As the Court discussed in its earlier order, Plaintiffs had an obligation under the terms of the loan to make payments and were clearly put on notice of the consequences for failing to do so. Plaintiffs have modified some of the language in these claims for relief, but the preexisting obligation to stay current on their loan remains, despite their misconceptions of what might have resulted from the loan modification process. The Court concludes Plaintiffs have again failed to connect Aurora

5

1  Services' alleged misrepresentations regarding a possible
2  modification, which was never promised to them, to their failure
3  to cure their arrearages and their eventual default on the loan.
4      Plaintiffs cite to a series of cases they argue support
5  their contentions.  However, as pointed out by Defendants in
6  their reply (Doc. #17), those cases involve materially different
7  factual circumstances and claims.  Plaintiffs first point to
8  Chavez v. IndyMac Mortgage Services, 219 Cal.App.4th 1052 (2013)
9  for support.  In Chavez, the lender mailed a homeowner a loan
10 modification agreement that the homeowner signed, returned and
11 performed under.  Id. at 1055.  The lender, however, never mailed
12 the homeowner a signed copy of the loan modification agreement
13 and then attempted to rely on the statute of frauds defense to
14 renege on the deal.  Id.  The Chavez court found the homeowner
15 alleged viable claims for breach of contract and wrongful
16 foreclosure.  Id. at 1060-64.
17     These facts are entirely distinct from those alleged by
18 Plaintiffs.  Defendants never entered into a contract with
19 Plaintiffs that they did not perform on, or make promises they
20 did not keep.  The two agreements involved, the original loan
21 agreement and the TPP, were both breached by Plaintiffs when they
22 failed to properly make payments under them.  The Court finds
23 Plaintiffs' reliance on Chavez unpersuasive.
24     Plaintiffs next rely on Fleet v. Bank of America N.A., 229
25 Cal.App.4th 1403 (2014).  In Fleet, Bank of America agreed to
26 enter into a TPP with the plaintiffs.  Id. at 1406.  Bank of
27 America specifically told the plaintiffs that if they made three
28 payments under the TPP their mortgage would be "permanently

6

1    modified." Id. at 1405, 1409.  Bank of America even went so far
2    as to tell them that they would get monthly statements to pay a
3    higher amount, but to ignore those and pay the previously agreed
4    to amounts. Id. at 1412.  After the plaintiffs made the first
5    two payments as agreed, Bank of America reneged on its promises
6    and foreclosed on the plaintiffs' property. Id. at 1406-07.
7    During this time, several Bank of America representatives spoke
8    directly with the plaintiffs, assuring them the TPP was still in
9    full effect and telling them to ignore demands for payment. Id.
10   at 1412.
11       The Fleet court found the agreement between the parties
12   "guaranteed a modification of the [plaintiffs'] mortgage" upon
13   the plaintiffs' satisfaction of certain conditions, but Bank of
14   America foreclosed on the loan despite the plaintiffs' adequate
15   payment on the TPP. Id. at 1410.  The court found this
16   sufficiently supported a claim for breach of contract, or in the
17   alternative a claim for promissory estoppel. Id. at 1409-10,
18   1412-13.  It also found Bank of America improperly broke its
19   "promise" of a loan modification, supporting a claim for
20   promissory fraud. Id. at 1411-12.  Further, the direct
21   misrepresentations of the representatives supported a claim for
22   fraudulent misrepresentation, as the representatives explicitly
23   told the plaintiffs to ignore payment demands and assured them
24   the TPP was still in effect and would shield them from
25   foreclosure. Id.
26       Again, these facts can be easily distinguished from those
27   alleged by Plaintiffs here.  Defendants never made any promises
28   to Plaintiffs that they would receive a loan modification or that

                                    7

1  they should ignore the payment demands.  Plaintiffs do not allege
2  they were assured their payments under the TPP were sufficient.
3  Plaintiffs' reliance on Fleet is misplaced.
4      Plaintiffs rely on Bushell v. JPMorgan Chase Bank, N.A., 220
5  Cal.App.4th 915 (2013) for additional support.  In Bushell, Chase
6  Bank entered into a TPP with the plaintiffs.  Id. at 919-21.  It
7  sent a letter to them specifically assuring them that if they
8  make all three TPP payments on time they will receive a permanent
9  modification of the loan terms.  Id.  Despite making a series of
10 payments in full under the TPP, the plaintiffs were told they
11 were being denied a modification.  Id.  Then, when the plaintiffs
12 called for an explanation, they were told by Chase Bank that they
13 should stop making payments altogether while it was "crunching
14 the numbers."  Id.  Chase Bank then started the foreclosure
15 process.  Id.  The Bushell court found the plaintiffs' claims
16 were viable because they had performed all obligations under the
17 TPP and were due the modification.  Id. at 926-31.
18     Here, Plaintiffs point out that the FAC specifically alleges
19 the TPP constituted a false promise and as in Bushell, their
20 claims should be found viable.  However, this legal conclusion is
21 without support.  Plaintiffs concede in the FAC that, unlike the
22 Bushell plaintiffs, they failed to make full payments under the
23 TPP as clearly requested by Defendants.  Bushell does not,
24 therefore, rescue Plaintiffs' claims in this case.
25     Despite Plaintiffs' counsel's vigorous oral argument, the
26 factual allegations involved in the case at hand do not support
27 his theories.  Unlike the cases cited in Plaintiffs' brief,
28 Defendants did not make any promises regarding the loan

8

modification process, the TPP or the underlying mortgage agreement that they did not fulfill.  In addition, many of the cases cited by Plaintiffs involved plaintiffs that entered into TPPs and successfully performed under their terms.  Here, Plaintiffs admit they failed to make the full payments required under the TPP despite receiving communications from Aurora Services of the amounts due.  Defendants' motion to dismiss the claims for intentional and negligent misrepresentation is, therefore GRANTED.  Because these grounds are dispositive of the motion, the Court does not address Defendants' remaining arguments.

   C.   Conversion

   Defendants next move to dismiss Plaintiffs' conversion claim.  As the Court previously discussed in its Order on Defendants' first motion to dismiss, Plaintiffs are attempting to challenge the securitization of the loan.  However, as the Court previously stated: "The alleged securitization deficiencies cannot serve as the basis for the conversion [claim] . . . .  Again, Plaintiffs were under an obligation to make payments on the Loan provided and serviced by Defendants."

   As the minimal alterations in the FAC fail to cure the deficiencies previously discussed, the Court again finds this claim is not viable, and GRANTS Defendants' motion to dismiss the fourth cause of action for conversion.  See generally, Reade v. CitiMortgage, Inc., 13CV404 L WVG, 2013 WL 5964611, at *4 (S.D. Cal. 2013) (finding a borrower's obligations are not excused because of an improper securitization); see also Marty v. Wells Fargo Bank, CIV S-100555 GEB, 2011 WL 1103405, at *7 (E.D. Cal.

1  2011).

2        D.   <u>Equitable Accounting and Unjust Enrichment</u>

3        Plaintiffs have reasserted causes of action for equitable
4  accounting and unjust enrichment. The cause of action for unjust
5  enrichment in the FAC adds only one paragraph (FAC ¶ 108) to the
6  original statement of the claim. In it, Plaintiffs allege
7  Defendants had a scheme to "induce Plaintiffs to fall further
8  into default by inducing Plaintiffs to believe they were making
9  full payments under the TPP." However, as discussed above and as
10 is clearly set forth in the FAC, Defendants sent them notices of
11 their required payments, and Plaintiffs admittedly failed to pay
12 the full amounts. The Court finds the additional allegations in
13 the claim unpersuasive, unsupported by the facts, and ineffective
14 in saving the cause of action. The Court GRANTS Defendants'
15 motion to dismiss this cause of action for unjust enrichment.

16       The FAC fails to make any changes to the cause of action for
17 equitable accounting. The motion will therefore be granted as to
18 this claim, especially given there are no underlying claims left
19 to support what is more aptly described as a remedy rather than a
20 stand-alone cause of action.

21       E.   <u>UCL Claim</u>

22       Defendants next move to dismiss Plaintiffs' fifth cause of
23 action alleging a violation of California's UCL, Business and
24 Professions Code § 17200. Because Plaintiffs have not adequately
25 alleged damages or injury as a result of Defendants' conduct, the
26 claim must fail. Cal. Bus. & Prof.Code § 17204; <u>Kwikset
27 Corporation v. Superior Court of Orange County</u>, 51 Cal.4th 310,
28 320–21 (2011) (finding private standing is limited to any person

who has suffered injury in fact and has lost money or property as a result of alleged unfair or unlawful conduct). The Court GRANTS Defendants' motion to dismiss the fifth cause of action.

F. <u>Leave to Amend</u>

The Court finds Plaintiffs have failed to show they can properly allege any of these claims and any further attempt would be futile. Accordingly, Defendants' motion to dismiss the FAC is granted in its entirety WITHOUT LEAVE TO AMEND.

### III.  ORDER

For the reasons set forth above, the Court GRANTS the motion to dismiss WITHOUT LEAVE TO AMEND.

IT IS SO ORDERED.

Dated: March 6, 2015

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

11